Alright, going to our second case, United States of America v. Narang. I'm going to take a shot at this and tell me if I'm wrong. Mr. Kayonaga, is that the way you pronounce your name? Kayonaga, Your Honor. Alright, thank you, sir. And Mr. Hannon. Alright, you may proceed, Mr. Kayonaga. It is before John Kayonaga v. Richa Narang. Ms. Narang was tried without an indictment, without any regulation, recognizably prescribing the behavior that she's depicted, but it's too specific for the element. Ms. Narang was indicted for visa fraud. She subsequently pled guilty to a replacement information for wire fraud, cooperated with the government. The government issued a superseding indictment. The grand jury at the government's behest issued a superseding indictment against two of Ms. Narang's co-defendants. The superseding indictment did not include Ms. Narang. The case under the superseding indictment was dismissed after a discovery of a rating violation, consequent to which Ms. Narang was left without a plea. She eventually withdrew her plea for the information. Some ten weeks later, she was tried on the indictment. At the time of her trial, there had been no appeal for the dismissal of the indictment. There had been no motion to reinstate the indictment, and there had been no order to reinstate the indictment. Ms. Narang was a mid-level manager for EconNets, a staffing company owned by Raj Kasturi, dedicated to the business of recruiting workers from India who are end-users in the industry. This was known as third-party contracting, wherein the people petitioning for the H-1B visa were not the people who ultimately would have the workers sitting in their facilities doing their work. And because the government was hostile to third-party contracting, they charged the members of the Siri companies, including Ms. Narang. The specific misconduct, which the government alleged, comprised the use of shell companies. The use of shell companies, the use of fictitious names in signing the petitions, petitioning for speculative positions, touting Danville, Virginia as the locus of the Middle Community Forum, when in fact there was no work to be done at Danville, and benching, the practice of not paying visa beneficiaries until they were actually hired and working. These were all earmarks of the practice known as third-party contracting. The jury. The grand jury belongs to no branch of the government. In fact, it is functionally independent of the government for the specific purpose of serving as a buffer between individuals and courts and the executive branch. At the time of Ms. Narang's trial, the indictment had been dismissed. The dismissal had never been appealed. There had been no motion for reinstatement, no order for reinstatement. As a practical matter, the indictment was absolutely beyond the reach of the government and the court. A court cannot assume that one grand jury is going to behave the same way as another, and that's particularly important in this case, where the trial court found the government's conduct before the grand jury that issued the only indictment shocking and extraordinary by virtue of the way they led the witness. Counsel? Counsel? Yes, sir. This is Judge Richardson. Can you just take a minute on the order piece of this? I understand there are a number of different pieces, but on what you claim is a lack of an order and respond, we recently, in a case called Solov, said that the failure to explicitly accept a plea agreement, we would deem that to be accepted where it was implicit. And so it seems here I'd love you to tell me why that principle should not equally apply here, given that setting trial and all the actions taken were quite implicitly clear that the indictment had been reinstated. Why is the Solov decision not applicable here in your view? Several reasons, Your Honor. First of all, in order to reinstate an indictment, the government needed to follow Section 3296 and move the reinstatement within the jurisdictional 60-day period following the withdrawal of the plea to the substitute major. Let's just assume that was done and focus on the order question. Well, Your Honor, in order for there to be an order, there has to be, in effect, an order. The only statement the trial court made on the issue was prior to the withdrawal of Ms. Narang's guilty plea to the information outside the jurisdictional window for filing a motion accorded by Section 3296. She made a prospective statement about her intent should Ms. Narang elect to withdraw her plea. Two weeks later, Ms. Narang did, in fact, withdraw her plea. Why is that different from Solov? That's what I'm trying to get at. Maybe there's not a distinction, but do you have a distinction from the rationale given in Solov? Yes, sir. The trial court did not have jurisdiction to reinstate the indictment. There had been no motion for reinstatement of the indictment, and most particularly within the period allowed by 3296. That is a jurisdictional statute as per the Bowles decision, and the court has to conform its conduct to the requirements of that statute just as the government had to. There was no motion to reinstate the indictment within the 60-day period under the statute. There was no motion at any time. Therefore, the court lacked jurisdiction unilaterally to reinstate the indictment. That's a very clear prescription. Let me understand, just to make sure I'm understanding the argument. Your position is that the motion must be made after the withdrawal of the guilty plea, but I don't naturally read the language to say that. Why do I read within 60 days to mean, you know, within 60 days after the order? There's no after in the statute that we have here. Why is it limited to after the withdrawal? Your Honor, because I would submit that inferring after is the only reading that would make any sense. But in the same U.S. Code, we have a number of instances where it does say within a certain time period after, and we have other instances where it says a certain time period before, and then here we say within a certain time period of, and the of seems to include both before and after. Why not? Because 30 days after the court entered the order dismissing the indictment, the indictment was beyond the reach of the court and the government. It had essentially evaporated. The court did not have the jurisdiction unilaterally at that point to reinstate it. It required conformity with the requisites of 3296, and 3296 would make no sense if it accorded jurisdiction to the court before the operative event that created that jurisdiction, which had to be initially the withdrawal of the plea to the information and secondarily a government motion seeking the reinstatement. Mr. Coyoke, two questions. One, isn't jurisdiction predicated upon a violation against the laws of the United States first? And secondly, if that's true, the court had jurisdiction. Why can't we just treat this as a ministerial problem as opposed to jurisdictional? Your Honor, first of all, the statute you're citing is a general statute for providing course of jurisdiction over all criminal offenses in violation of the federal code. The statute that we're discussing is far more focused and therefore controlling, dealing with the issue of an indictment when the issue when an indictment is alive and operative and when it is dead and irretrievably beyond the reach of the court and everyone else. Congress limited the court to 30 days from the dismissal to reconsider the dismissal of an indictment. Once those 30 days lapse, which they unquestionably did in this case, the indictment is gone. There is no way to bring it back. I'm sorry. I'm just I want to make sure I'm following you. What is the 30 days? What statute is 30 days in? Section 3731, Your Honor, the 30 days to appeal an order of a court. So, in other words, you're saying the district court's jurisdiction turns on the existence of appellate jurisdiction. I'm not I'm not sure what 3731 has anything to do with the district court's jurisdiction. Your Honor, your question, I would submit, is intertwined with the unique position of the grand jury. The grand jury is uniquely and exclusively able to return an indictment. Once the indictment is dismissed by the district court, it becomes final after the expiration of 30 days. As per the operation of 3731, it cannot be restored. It cannot be resurrected unless there's an appeal or unless there's a withdrawal to a subsequent information, which would then implicate the requirements of 3296. The Congress did not envision basically perpetual indictments floating around in the ether, ready for the judge or the government to resurrect them at will. The court's jurisdiction over the indictment ended 30 days after the court entered its order dismissing the indictment. There are only two orders pertaining to the indictment in this record. The return of the indictment from the grand jury and the dismissal of the indictment. That's it. And that deprived the court utterly of jurisdiction to try Ms. Narang under the indictment. They could have tried her under the information, but that's not what the government offered to do. The information was never dismissed. And the court even admitted, and I would direct you to joint appendix page 171, just prior to opining prospectively about her ability unilaterally to reinstate the indictment. She said, I don't even know which charging document Ms. Narang has at this point. So I would submit to the court that it would be an error to infer from this process an undue amount of deliberation. Counsel, this is Judge Quattlebaum. I have a question. Assume just for discussion that we disagree with you that 3296 is jurisdictional, and we believe it's procedural or ministerial. It seems as if there's at least a pretty good argument your client didn't object, although I know you're not conceding that. But assume we're looking at this under plain error for a non-jurisdictional issue. What would be your position about how you satisfy the requirements of our plain error review? Your Honor, first of all, the government has the burden on the review of a jurisdictional issue. But I would submit the government maintains that having raised the issue, somehow Ms. Narang somehow waived it because she didn't further brief it. Any judge who's sat as a trial judge knows that once a litigant makes his or her position known and it's rejected by the court, the courts do not appreciate having it repeated. I raised the issue very, very clearly. I said without any ambiguity that if the government wants to proceed by indictment, it's going to have to return to the grand jury for a new one. This was before Ms. Narang withdrew her plea to the information. The government essentially waived. If the court is seeking for the sake of argument to treat this as a non-jurisdictional question, then the government waived the ability to proceed under indictment by failing to move the reinstatement of the indictment. Would the court allow me to continue? Can the court hear me? Yes, sir. Yes, sir. We hear you. May I continue, Your Honor? Yes. My fundamental point is this. The grand jury is uniquely positioned in the constitutional firmament as a buffer between individuals and the branches of government. There is no way to honor that purpose and that position by allowing an indictment to exist indefinitely. It dies once it's dismissed. If it's not restored by appeal and it's not restored by a motion to reinstate, it is permanently, absolutely, and dispositively defunct. Now, 3731 is a jurisdictional statute. It allows 30 days to note the appeal. The Weaver decision of this court has said as much. The government never noted an appeal. As I said earlier, 3296 under Bowles is also jurisdictional. The government's claim that it is not simply leaves it open to the fact that it's not jurisdictional. They waive the right to proceed by indictment by not moving to reinstate. The court's order, this court's memorandum of opinion was issued 21 months after the trial. The court found in her order that she had reinstated prior to trial the indictment. She did not specify when, she did not specify how, because there is absolutely no reflection in the record of any order to reinstate the indictment. The only mention by the court of the indictment came prior to the withdrawal of Ms. Narang's plea in response to my having identified the issue and insisting that the government needed to return to the grand jury if it wanted to proceed by indictment. The court issued prospectively an opinion that, or a statement that she would unilaterally indict. The fact that she never followed up. Mr. Kayanagi, your time has expired. You have some time in rebuttal. Very well, Your Honor. All right, Mr. Hanley. May it please the court, I'm Jack Hanley. I represent the United States in this appeal. The statute 18 U.S.C. section 3296 is not a jurisdictional statute. It is not a statute that the court's ability to preside over the case, rather it decides how the court is supposed to exercise its authority under certain circumstances. The Supreme Court has cut back very much, and so has this court, on what's considered jurisdictional and what is not. There are a few things, though, that are pretty consistent in those cases. One of them is clear legislative purpose that the statute is to be jurisdictional. It doesn't have to be any magic words by Congress, but it has to be pretty clear. The second thing would be that the jurisdictional statutes determine whether the court can even preside over the case or the matter. In cases where the court is already presiding over the matter, already has jurisdiction over, and there's a statute that tells the court how to exercise its authority, that's not a jurisdictional statute. The court already has a jurisdiction. The third thing that I've noted about these types of decisions is if something is jurisdictional, it's not waivable. Now, if we apply those principles here to this case, you read the statute. I submit that there is no clear congressional purpose in making this a jurisdictional statute. Secondly, and very important, this court already had jurisdiction over this indictment. This court had jurisdiction over this case well before the plea and then the dismissal of the counts and the reinstatement. The court was presiding over the case, and throughout the time period, there were always charges pending before the court. First was the indictment, then the information came, and then the court reinstated the indictment. This is clearly a claim processing rule, as they call it. It's not a jurisdictional statute. And third, if you look at the provisions of that statute, I think you can conclude, although I don't have a case to support it, those are waivable provisions. It's a jurisdictional statute. It can't be waived. But the Supreme Court's Cotton case and this court's Hartwell case make it clear that even the requirement that there be a grand jury indictment for a prosecution of a felony can be waived. In fact, it's done every day. Grand jury indictments are waived every day. I think with this statute, it's a claim processing statute, and that's the way the facts of this case should be analyzed. If you analyze the facts of this case, first, I suggest Mr. Kiyonaga is in error when he said there was no motion by the government. The government did not file a separate document titled motion. Perhaps the government, myself being the one, should have entitled the document motion in response to defendant's motion to dismiss indictment and motion to reinstate the indictment. I didn't do that. That's my error, but I don't think that's a fatal error. I believe that in the government's response filed on September 8, 2017, to Mr. Kiyonaga's motion to dismiss the indictment, the government's final paragraph was the request that the court deny the motion to dismiss the indictment, allow Ms. Narang to withdraw her plea, reinstate the indictment, and set the matter for trial. Next hearing was September 22. Well, on August 11, Mr. Kiyonaga brought up the fact that the government thought the court could reinstate the indictment unilaterally. I believe that was based on a conversation that I'd had with him. It was not in a prior pleading. But by September 22, we had included that paragraph in the response to the motion to dismiss the indictment, asking that the indictment be reinstated after Ms. Narang withdrew her plea. Judge Brinkema, on September 22, brought up the paragraph that the government had included. And she had already made known on August 11 that she believed that she could do that. She had said, Ms. Narang withdraws her plea, and I intend to reinstate the indictment. So we were operating with that background. And Judge Brinkema brought up the government's request for reinstatement. But she said, I'm not prepared to do that yet unless Ms. Narang has made her decision. And Mr. Kiyonaga said, Ms. Narang has made her decision. We want to withdraw the plea. Judge Brinkema said, all right. Well, at that point, all through that point, the government's motion, and the government, we submit that the paragraph we put in the response to the motion to dismiss was a motion. That motion was pending. It didn't stop at the time of the motion. That motion was continuing to remain pending, to remain pending throughout Mr. Kiyonaga's statement that Ms. Narang moves to withdraw the plea. And then Judge Brinkema said, all right. At that point, she was granting the motion. It could have been clearer, but all the parties knew what she was doing. Her act was just ministerial. She knew that she had to do it because the government had made the motion, and Ms. Narang had elected to withdraw her plea. Judge Brinkema says, all right. And then Mr. Kiyonaga immediately went in talking with the judge about setting a court date and what would be difficult for him for trial. And I believe I probably answered the judge's question about what would work for us. And then the judge held in abeyance the trial date and told us to talk about it more. But then Ms. Narang, at that point, waived her right to a jury trial. If they believed that the indictment was not pending, we think they would have said something. They didn't. They waived the right to a jury trial. Mr. Kiyonaga, at that time, did not acknowledge that the trial would be the indictment rather than the information. But subsequently, he moved to dismiss the indictment. He did not say anything about the indictment. It hasn't been reinstated. He moved to dismiss it before the trial. He also moved to limit the government's evidence to only those overt acts of the conspiracy that had been alleged in the indictment, not to any additional acts. He said nothing then about there's no reinstated indictment. He moved again to dismiss the indictment after the trial. Again, he did not bring up the argument. Judge Brinkma issued her opinion as if the indictment had been reinstated, and she, in fact, said the indictment had been reinstated. Subsequently, more than two years after this, Mr. Kiyonaga filed a motion on behalf of the defendant with this court asking for bail. And in there, he said that the indictment had been reinstated. So in our view, that indictment, as everybody saw it, had been reinstated. We agree with Judge Richardson's analysis. The Stoloff case situation certainly applies here. The court found in that case that the plea had been accepted, even though there weren't any magic words accepting the plea. In this case, there was nothing more for Judge Brinkma to say. She didn't have to justify interests of justice like in speedy trial or manifest necessity like in a double jeopardy situation. All she had to do was say, indictment reinstated. What she said was all right, but all the parties interpreted that as reinstating the indictment. I point particularly at the Mann case where this court has said, when it's not clear, you look at how the judge interpreted his or her own order. In this case, Judge Brinkma clearly interpreted what she said, as did the parties at the time, that the indictment had been reinstated. It's important that this is not a jurisdictional rule because as a claim processing rule, it is subject to a plain error standard. Mr. Kiyonaga forfeited any argument that the indictment had not been reinstated. So it has to be analyzed in terms of plain error. He had objected early on saying that I think there has to be a grand jury. When Judge Brinkma said, well, brief it if you want to, but I don't agree with you, I don't think, but go ahead and brief it, he chose not to do so. But that was the argument about whether there had to be a grand jury. And I think the Cotton and Hartwell cases make clear that it doesn't necessarily have to be a grand jury. There can be other ways to bring charges before the court, which is done all the time. And so here we have to look at, is there any plain error? And there is no plain error. There's no law out there that says Judge Brinkma had to give some magic words. There's no law out there that says the government's motion can't be in another pleading. It has to be in something specifically entitled motion. We think he's forfeited the error, if there is any. The government submits there isn't any error. But if there was one, it was forfeited, and therefore it would have to be by plain error. And clearly here, it's not plain. There's no case law out there that would suggest in any way that reinstatement of the indictment here was a plain error. And there's no prejudice to the defendant. Had he brought it up, the government could say, yes, Your Honor, we make a motion, and Judge Brinkma could have said, then I reinstate. That's really not necessary. But if he wanted to make the argument, he should have made the argument, and then it could easily have been corrected. As the proceedings went, there's no harm to him. He had the same trial he would have if he had followed those proceedings. And Ms. Narang had the same trials. She had the same rights. So in the government's opinion, everything was done properly here. It could have been done a little more clearly by both myself and by Judge Brinkma. But it's not so much that there's a plain error here. That's our argument on that point. Beyond that, Mr. Kiyonaga had made several arguments about the sufficiency of the evidence. Judge Brinkma was very thorough in her opinion. She focused, as the government did, on the false statements as to where the beneficiaries would be employed when they obtained their visas. That was a document, the H-1B petition, and included within that and required was the LCA document. Both of them included the name and where the people would be employed. And the lies on there were clear. Mr. Kiyonaga brought up in his 28-J letters certain concepts that he thought weren't clear in the regulations of ICE. And there was one opinion, ITSERV, in the U.S. District Court in D.C., where there was an argument not over whether location and the actual job availability would be when the person got their visa. It was rather whether ICE could require, as they were at that time, that applicants submit where the job is going to be for the next three years. And that was what was invalidated. It was never invalidated that on their applications they had to put what the job would be, where it was, and who the employer was. So Judge Brinkma's opinion did talk about a number of things that showed there was fraud here. She talked about the benching, where people aren't working during certain periods of time. She talked about the ComNets and, in particular, the defendant requiring visa applicants who got their visas but didn't have any jobs sign voluntary leave petitions so that ComNets wouldn't have to pay them. She talked about the shell companies, which in and of themselves aren't a fraud. She showed how these shell companies made a difference and allowed the fraud scheme to proceed. So for the reasons that she stated, we believe that the case was more than sufficient and the conviction should stand. Mr. Kiyonaga had brought up in his brief advice of counsel, and he did not lay any kind of specifics out there that would have supported an advice of counsel defense. First of all, we don't even know whether Ms. Narang relied on anything at all. There's no evidence of that. But he talked about a few issues. He said shell companies, counsel said, were legal. Well, the question is, were they told how the shell companies were being used? Well, that wasn't in the record. He talked about voluntary leave petitions. Were they legal? Again, counsel might have said they're legal, but there's no indication that counsel knew how that process was being used, all to support the fraud as opposed to anything else. And the third thing he said was that Mr. Kasuri, who's the owner of Economets and testified for the government, said, and I think Ms. Coward did as well, everybody at the facility knew that there were no jobs at Danville, that that was false. Mr. Kiyonaga asked, well, did Mr. Chacko know about that? He was one of the lawyers. And Mr. Kasuri said yes. Mr. Chacko may have known about it at some point. I would submit Exhibits 47 and 48. So he didn't apparently know about it in 2013. He was acting as if everything was above board. In 2014, in an e-mail to Ms. Narang, he was warning her about leaving Economets names off the leases, that she should have left them off the leases for the Shell Company. So at that time he probably knew. But Mr. Kiyonaga did not follow up. There's no indication when Mr. Chacko knew that there was some kind of fraud going on. There's no indication whether it was his advice that was given to Ms. Narang or whether it was the advice of the other lawyers who apparently didn't know that there was no jobs at Danville. So their advice would have been accurate if there had been places open at Danville. Those are the arguments that I want to address. If this court has any questions, I'll be happy to answer them. Otherwise, I'll stop at this point. I think they're indicating we don't have any questions. Thank you very much for your argument. Mr. Kiyonaga, you have five minutes in rebuttal time. Thank you, Ron. The government had the burden to reinstate the indictment. It erred by failing to do so. If the requirements of 3296 are not jurisdictional, the government has admitted they did not file a motion to reinstate, and the issue has been waived, and the indictment was forfeit. I would ask the court to consider how 3296 can be considered not jurisdictional if it is the only means by which a court can reinstate an indictment which has been dismissed and for which the appeal period has passed. The grand jury is a separate entity with a power that the court, frankly, cannot touch. This window into creating an ability for the court to do so is clearly jurisdictional. The government's position that it is not essentially admits a waiver that resolves the issue of any of that. But the government misstates that the court already had jurisdiction, and it disappeared with the expiration of 30 days after the dismissal. The government also mentioned benching, although I read the government's 28J to concede that benching was not material to the trial court's order and not to be considered today. There is no question but that 3296 was jurisdictional. It provided a very, very consequential, that is to say, limited jurisdiction for the court to restore, i.e. reinstate an action that was outside of its control. The government enacted in 2018 a policy memorandum 6021057. I'll call it the policy memorandum. This is addressing exactly the supposed misuse by the COSURI companies. The D.C. District Court last year rejected the policy memorandum in its entirety as it's consistent with statutes of law, as arbitrary and capricious, as vague. In fact, it said it upends a business model, i.e. third-party contracting, without congressional sanction. The court should note that the government was aware of the unenforceability of its regulatory regimen governing H-1B positions as early as April of 2017. They acknowledged to the D.C. court that they began to review, or they acknowledged in a publication with a later regulation that they began to review their regulations with an eye to clarifying them. It bears noting that the government never shared these doubts that they had about their own regulations with Mr. Wrang, although they started reviewing the regs seven months prior with the trial court or with this court. A law that cannot be understood is a law that cannot create men's regs. That's by the malice decision out of this court. The trial court committed two very, very grievous errors in reviewing the evidence. In order to prove visa fraud, the government had to prove materiality, a sworn statement, and then grant. Materiality was forfeited in the beginning because almost everything that the consulting companies did was either not prescribed by regulation or statute or affirmatively allowed. Shelf companies, they could point to no regulation forbidding it. The government's own expert, Mr. Violet, admitted that intermediaries are common in the petition process. Fictitious names, no regulation forbids it. As long as it binds the company, it's fine, also from Mr. Violet. More importantly, the regulations call for petitions to be signed by human resource managers, and they specifically allow anglicized names for the signatures. The Kazuri human resource manager was Sanchita Bhattacharya. The two pseudonymous names were Sonia Basu and Sam Bowes, clearly anglicized versions. Prospective employment was also not forbidden. In fact, the regulation precluded petitions for positions that would not become available until more than six months of the last. So the regulations themselves envisioned prospective applications, and Mr. Kazuri admitted, I'm sorry, Mr. Violet admitted as much. The only other two items of misconduct, quote-unquote, were the practice of reflecting Danville as a locus of work and the practice of venting. Venting is off the table as per the government's own concession. Danville was a location, was a matter exclusively within the control and the purview of the Department of Labor. Under the razor case of this circuit, a fraud against the government has to be proven by demonstrating the materiality of the misstatement to the agency or individuals to whom it was targeted. Absolutely nobody turned to the Department of Labor. Mr. Kayanaga, your time has expired. So we thank you very much for your argument. And to both of you, ordinarily we would come down and shake your hand. Unfortunately, virtually we can't do that. So just take a virtual handshake. Thank you very much for your arguments today.
judges: Henry F. Floyd, Julius N. Richardson, A. Marvin Quattlebaum Jr.